GANSEVOORT BANK, PLAINTIFF IN ERROR, v. GEORGE CARRAGAN, SURVIVING PARTNER OF R. B. POUCHER & COMPANY, DEFENDANT IN ERROR.

Argued March 9, 1903—Decided June 15, 1903.

The fact that a bank deposit stands in the individual name of one of the partners of a firm shows, at most, that he has legal title thereto, and is not conclusive evidence that the firm has no interest therein. Extraneous evidence is admissible to show that the equitable title and substantial ownership of the funds are in the firm, and that moneys going to swell the deposits, in fact, go to the benefit of the firm.

On error to the Supreme Court.

For the plaintiff in error, *Joseph Anderson* and *William D. Edwards.*

For the defendant in error, *Van Buskirk & Parker* and *Charles L. Corbin.*

The opinion of the court was delivered by

PITNEY, J.  This action was brought against the surviving partner of a firm that was second endorser upon three promissory notes amounting in the aggregate to. $5,500, all made in .the summer of 1901, and discounted in the ordinary course of business by the plaintiff bank.  The notes were identical in form with respect to parties, each being made by one J. A. Machemer, payable to the order of R. B. Poucher, and endorsed by Poucher and by the firm of R. B. Poucher & Company.  The proceeds were credited on the books of the bank to an account that stood in the individual name of R. B. Poucher, and were used in whole or in part for the payment. of maturing notes, similar in form with respect to parties, that had been previously discounted and credited to the Poucher account in like manner.  These payments of the maturing notes were made by checks, signed by R. B. Poucher and drawn to the order of the bank.  The firm of R. B. Poucher & Company was formed in the year 1894, and continued until the death of Poucher, which occurred in the fall of the year 1901.  The partners were R. B. Poucher and the present defendant, George Carragan.  Poucher was the active man. of the concern, and was in sole charge of the conduct and management of its business.  The partnership articles were in evidence, and show no limitation upon the powers ordinarily conferred upon the several partners by such an agreement.

Upon the trial of the action it appeared that Machemer, the maker of the notes, was a bookkeeper in the employ of the firm, and that the several notes were drawn up and signed by him; that the endorsements were in the handwriting of Poucher, and that. the notes had been duly protested at maturity.  The defence was that the partnership endorsement was made by Poucher. for his own accommodation, without

the knowledge or authority of the defendant, his co-partner, and that the plaintiff had notice of the accommodation character of the transaction so far as the second endorsement was concerned, because the notes were presented for discount by the first endorser and the proceeds were credited to an account that stood in his own name and used in payment of maturing notes, upon which he was primarily liable as between him and the firm. The trial judge acceded to this view, and held that under the circumstances the second endorsement must be presumed to have been made for the accommodation of the payee or of the first endorser, and that in a partnership the presumption is against a binding accommodation endorsement unless by consent of all the partners, so that the bank was put upon inquiry to ascertain whether authority had been given by Carragan to Poucher to use the firm name for the personal benefit of the latter; and since, according to the uncontradicted testimony, such inquiry would have developed the fact that Carragan knew nothing of the transaction, and had authorized no endorsement by his firm for Poucher's accommodation, it was held that a complete defence had been presented. A verdict was thereupon directed in favor of the defendant, and to this ruling a bill of exceptions was sealed.

The plaintiff's answer to the defendant's contention was that it was unfounded in fact, it being insisted that the notes in suit, and also the prior notes, of which they were in whole or in part renewals, were given in and about the business of the firm and for the firm's benefit. If this was true, the signatures of the maker and of the first endorser were loaned for the accommodation of the firm, and the firm was as between the parties primarily liable; that being so, the making of the firm endorsements was within the ordinary partnership authority of Poucher as plainly as if the firm name had appeared upon the notes as maker instead of endorser. A second contention made on the part of the plaintiff was that even if it were not true that the three notes in suit were given in and about the firm's business, and the proceeds thereof used in that business, yet a course of dealing had existed between the bank and the firm of R. B. Poucher & Company for some

time prior to the making of the notes in question, in which numerous notes of like form had been discounted by the bank at the instance of Poucher, but for the firm's benefit, and the proceeds thereof passed to the credit of the R. B. Poucher account and used in and about the firm's business, so that, upon the presentation of the three notes in suit, the officers of the bank had a right to believe, and that they did believe, that the R. B. Poucher account was really a firm account, and that the maturing notes were really firm obligations; so that those officers were not charged with notice that the firm endorsements upon the notes in suit were accommodation endorsements, and were not put upon inquiry to ascertain the authority of Poucher to endorse the notes with the firm name.

Some evidence was offered by the plaintiff, and admitted by the trial judge, which, it is contended (and, we think, correctly), supports these insistments. Much other evidence was offered by the plaintiff as tending in the same direction,. and was overruled by the trial judge, bills of exceptions being sealed. The main purpose of the evidence thus excluded was to show that the R. B. Poucher account was in part, or exclusively, a firm account; and to prove the course of dealing that antedated the making and discounting of the notes in suit, in order to show that at least the bank officers had a right to believe (as they did) that moneys placed to the credit of that account went to the benefit of the firm. As the excluded evidence was offered in a manner to clearly indicate its purport and effect, and since that part of it which was documentary has been returned with the bill of exceptions, it is easy and convenient to discuss the case as if the excluded evidence had been admitted.

So treating it, the facts bear this aspect: R. B. Poucher & Company were produce commission merchants, doing business in West Washington market, in the city of New York. At the formation of the firm in 1894 Poucher had an account in his own name in the Gansevoort Bank, and this account was continued without interruption and without change of name down to his death. During many years, and perhaps from the inception of the firm, a bank account was kept in the firm

name at the Irving National Bank. The place of business of the firm was distant about three city blocks from the Gansevoort Bank, and about three miles from the Irving National Bank. During some years prior to the summer of 1901— commencing at least as early as December 17th, 1898—the firm, from time to time, applied for and received from the Gansevoort bank discounts of its mercantile paper. Applications were sometimes made by Machemer or Poucher personally, and sometimes made by letter, the letters being written upon the letter-heads of the firm, bearing the names of Poucher and Carragan as partners. These letters were sometimes signed "R. B. Poucher & Co.," and sometimes "R. B. Poucher." In each instance they were written either by Poucher or by Machemer, the bookkeeper; Carragan, as already mentioned, being an inactive partner. The applications for discount in each instance gave the officials of the bank to understand that the loans were asked for the benefit of the firm. The notes were in most instances, if not invariably, made by Machemer to the order of Poucher, and endorsed by him in his own name and in the name of R. B. Poucher & Company, precisely in the same form as the notes in suit; the proceeds were passed to the credit of the account of R. B. Poucher, and maturing notes were paid from that account by checks signed by Poucher.

On October 1st, 1900, a formal statement, in writing, of the assets and liabilities of the firm was made to the Gansevoort Bank. The statement began as follows: "For the purpose of procuring credit with the above bank for our negotiable paper, we furnish the following as being a fair and correct statement of our financial condition on the first day of October, 1900." Among the assets thus stated was the following item: "Cash in Gansevoort Bank, $1,071.87." This was the precise amount of the credit balance of the R. B. Poucher account in that bank on that day. The statement is signed "R. B. Poucher & Co., by R. B. Poucher."

Much evidence was excluded that would have tended to show that the Poucher account was in truth used in the business of the firm; that in many instances firm debts were paid

by checks drawn upon this account; that on numerous occasions checks were drawn upon it payable to the order of Machemer and deposited to the credit of the firm in the Irving National Bank, and frequently. moneys and checks paid into the firm in the ordinary course of its business were deposited by the employes of the firm in the Gansevoort Bank to the credit of the Poucher account. Of the checks drawn against this account, a large number was produced, covering a period extending from May 22d, 1901, to September 14th of the same year, during which period the three notes in suit were discounted. With respect to the greater number of these checks, evidence was either introduced or offered tending to show that they were given in payment of firm indebtednesses.

Enough has been said to demonstrate that the trial judge erred in directing a verdict for the defendant and in excluding evidence of the character indicated. His rulings were based upon the theory that the sole test of proprietorship over the funds represented by the R. B. Poucher account was the right of the other partner to control the account for firm purposes, and that when it was proved that the original discounts represented by the notes in suit were credited to that account those moneys were thereby placed under Poucher's personal control, to the exclusion of Carragan. We think this was no more conclusive, under the circumstances of the case, than the fact of finding money of the firm in the pocket of one of the partners would be conclusive of his individual ownership of that money. It may be that in prudent banking the Gansevoort Bank would not have recognized a check drawn otherwise than by R. B. Poucher himself. At most, this would tend to show that the legal title to the funds on deposit there was in Poucher, but it did not prevent Carragan, or anyone else concerned, from showing that the equitable title and substantial ownership were in the firm. We think the evidence in question was improperly excluded, and that if admitted it would clearly have raised a question to be submitted for the determination of the jury upon either or both of the issues tendered by the plaintiff in response to the case of the defence. From it the jury might have found that the notes in suit were

in truth given in and about the business of the firm, and the proceeds credited to the use of the firm; and, failing in this, they might have found either that the firm by reason of the previous course of business was estopped from disputing this fact, or that the bank by reason of the previous course of business was not chargeable with notice that the particular notes in question were made for the benefit of others than the firm. Upon such a finding, it would have resulted that the bank was not put upon inquiry to ascertain the extent of Poucher's authority to use the firm name in the second endorsement.

The judgment should be reversed, and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, VAN SYCKEL, DIXON, GARRISON, FORT, GARRETSON, HENDRICKSON, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VROOM. 12.